## BURKE *v.* FLOOD and others.

*(Circuit Court, D. California. January 26, 1880.)*

REMOVAL OF CAUSES UNDER ACT OF 1875.—Under the first clause of the second section of the act of 1875, which reads, " In any suit of a civil nature, * * * in which there shall be a controversy between citizens of different states, * * * either party may remove said suit," etc., it is necessary, to authorize a removal, that all the persons on one side shall be citizens of different states from those on the other side of the controversy. But to determine the right of removal the parties may be transposed and arranged on opposite sides of the controversy according to their real interests, without regard to their formal position on the record as plaintiffs or defendants.

REMOVAL UNDER SECTION 639, REV. ST.—B., a citizen of California, filed his bill in equity as a stockholder therein against the C. V. M. Co., a California corporation, the P. W. L. & F. Co., also a California corporation; F., a citizen of California, and M. & F., citizens of Nevada, all the latter being stockholders and officers, or agents, of both corporations, for an account between said corporations, and between the P. W. L. & F. Co. and F. M. & F., and for a recovery from said defendants by the C. V. M. Co. of a large amount of profits on numerous contracts alleged to have been fraudulently made in pursuance of a conspiracy, through defendants F. M. F. and O'B., acting as officers and agents of both corporations, and which profits came to the possession of F. M. F. and O'B. in dividends from P. W. L. & F. Co., the parties other than the corporations being copartners in business, and their acts complained of being their joint acts for their joint benefit as such copartners. The suit having been removed from a state court to the United States circuit court as to M. & F., citizens of Nevada, under section 639, Rev. St., on motion to remand, *held*, that there could not be a final determination of the whole controversy as to M. & F. without the presence of the P. W. L. & F. Co. and F., and that for this reason the suit was not removable as to M. & F. under the provisions of said section.

SAWYER, J. This cause having been removed from the state court on the petition of all the defendants, under the first clause of section 2 of the act of 1875, and by the defendants, Mackey and Fair, as to them, under the act of 1866, as carried into section 639 of the Revised Statutes, second subdivision, the complainant moved to remand it to the state court on the ground that this court has no jurisdiction, and that the case is not removable under either act. Upon the principle adopted in the *Sewing Machine cases*, (18 Wall. 553,) which arose under the act of 1867, and under the decision of the supreme court, made at the present term, in *Meyer et al. v. The Delaware Railroad Construction Company*, which arose under the first clause of section 2 of the act of 1875, and presented the point, I regard it as settled by that court that to remove a case under the latter provision it is necessary that all of the persons constituting the party on one side of the controversy must be citizens of different states from those on the other side. But for the purpose of removal the parties may be transposed and arranged in their proper positions, with reference to their interest in the controversy, without regard to their formal position as plaintiffs or defendants on the record. This is the rule, as I understand it,

to be laid down in the latter case, upon mature consideration, after a re-argument, in which any attorney feeling an interest in the question, whether of counsel in the case or not, was invited to participate as *amicus curiæ.* In this court this will be regarded by me as the settled construction of the section until otherwise ruled by the supreme court. In this case, even after transposing the Consolidated Virginia Mining Company, defendant, to the side of the complainant, Burke, we have still two citizens of California on one side of the controversy, and two citizens of the same state, California, and two citizens of Nevada on the other. The persons composing the party on one side of the controversy, therefore, not being all citizens of different states from the party on the other, the case was not removable under the construction established, and it must be remanded.

Was the case properly removed as to defendants Mackey and Fair under the act of 1866, as carried into the Revised Statutes in section 639? The complainant, Burke, a citizen of California, files his bill against the Consolidated Virginia Mining Company and the Pacific Wood, Lumber & Flume Company, both corporations organized under the laws of California, J. C. Flood, a citizen of California, and John W. Mackey and James G. Fair, citizens of Nevada. He alleges in substance, among other things, that he is a stockholder in the Consolidated Virginia Mining Company; that he has made a demand upon that corporation to bring the suit, which it declined to do; whereupon he brings it himself as a stockholder on his own behalf, and on behalf of all other stockholders who choose to come in and share in the expense of this prosecution, making the corporation a defendant. He further alleges that defendants Flood, Mackey and Fair, and W. S. O'Brien, were either directors, or controlled the directors of the defendant, the Consolidated Virginia Mining Company; that they fraudulently conspired together to injure the Consolidated Virginia Mining Company, and to that end organized the corporation defendant, the Pacific Wood, Lumber & Flume Company, of which they were the stockholders and officers, or controlled the officers; that through the de-

fendants Flood, Mackey and Fair, and W. S. O'Brien, since deceased, acting as officers or agents of both corporations, or through officers controlled by them, the Consolidated Virginia Mining Company entered into large contracts with the Pacific Wood, Lumber & Flume Company, whereby the latter agreed to supply and did supply to the former large quantities of wood and lumber at prices, which were in fact paid, larger than the same supplies could have been purchased for from other parties, and that the said Pacific Wood, Lumber & Flume Company thereby received profits on said contracts to the amount of $4,000,000, in excess of what it should have received, which profits came to the possession of said O'Brien and defendants Flood, Mackey and Fair through said Pacific Wood, Lumber & Flume Company, as the stockholders of said corporation. He also alleges that during the whole period embracing the transactions set out said Flood, O'Brien, Mackey and Fair were partners in business, and that their acts complained of were the joint acts of said partners, and performed for their joint benefit as members of said copartnership. He then asks that said contracts be declared void, and that an account be taken between the said Consolidated Virginia Mining Company on one side, and the said Flood, Mackey and Fair, and the Pacific Wood, Lumber & Flume Company on the other, of the moneys paid by the Consolidated Virginia Mining Company to the Pacific Wood, Lumber & Flume Company, and received by the latter under said contracts, and of the profits resulting therefrom realized by said defendants or either of them, or by said O'Brien, deceased, and that on said accounting the defendants be decreed to repay all said profits, moneys, etc., to the Consolidated Virginia Mining Company.

It will be seen that the remote parties are the complainant, Burke, as a stockholder of the Consolidated Virginia Mining Company; and Flood, Mackey and Fair, as stockholders of the Pacific Wood, Lumber & Flume Company—indeed, of both corporations. That the immediate parties to the contracts sought to be examined and set aside, and an account of whose profits is sought to be taken, are the Consolidated

Virginia Mining Company, and the Pacific Wood, Lumber & Flume Company, and that the moneys sought to be recovered are moneys paid by the first-named corporation to the latter upon the contracts set out, and paid by the latter in dividends to the said defendants Flood, Mackey and Fair, and to said O'Brien. The primary and immediate parties to the transaction alleged are the two corporations. The rights and liabilities of the complainant and the other defendants are secondary and derivative,

The provision of the Revised Statutes under which the removal is had, so far as applicable, is, when a suit is by a citizen of the state wherein it is brought "against a citizen of the same and a citizen of another state, it may be so removed as against said citizen of another state upon the petition of such defendant * * * *if, so far as it relates to him,* it * * * is a suit in which there can be a *final determination* of the controversy, *so far as it concerns him,* without the presence of the other defendants as parties in the case."

Upon the allegations of this bill can there be a final determination of the controversy, so far as concerns Mackey and Fair, without the presence of the Pacific Wood, Lumber & Flume Company, or without the presence of Flood? In my judgment there cannot. I do not see how a *final* account can be taken between the Consolidated Virginia Mining Company and the Pacific Wood, Lumber & Flume Company as to the profits on the contracts between them set out, and then between the latter corporation as to the amount of said moneys paid by it to Flood, O'Brien, Mackey and Fair, as copartners, without the presence as a party of either said corporation, or said Flood or O'Brien. Certainly none could be taken that would bind said corporation, or Flood, or O'Brien, without their presence, and, therefore, none that could be *final* as to Mackey and Fair. If one suit can be successfully prosecuted against Mackey and Fair alone, and another against Flood and the Pacific Wood, Lumber & Flume Company alone, then one can be prosecuted against each of said parties alone, and there might be in different

states, and in five different courts, five different suits pending upon these same transactions, and five different accounts taken between the Consolidated Virginia Mining Company and the Pacific Wood, Lumber & Flume Company, and another account between the latter corporation and Flood, O'Brien, Mackey and Fair, in each of the five suits; and the result in no two of the suits in any respect agree. Could they all be final? If not, then no one would be final. It was stated on the argument, and it is a notorious fact, daily reported in the newspapers, that there is in fact now pending in a state court by the same complainant, Burke, against the representatives of O'Brien alone, a proceeding for an account of the same transactions, so that if this suit is also divided there will in fact be pending three out of the five possible suits in which this litigation may be split up, and in three different courts. It is claimed by the complainant that the defendants are *tort-feasors*, and that each defendant is liable individually for all the moneys wrongfully received by the Pacific Wood, Lumber & Flume Company from the other corporation, and paid to the other defendants as dividends; but I do not suppose that he claims that the Consolidated Virginia Mining Company is entitled to recover the whole from each of the five parties involved in the transaction But in case of a suit against each, he would probably claim that he would be entitled to elect to take the largest sum found due upon the accounting in the several separate suits. Suppose in the five several suits brought, or that this suit is divided as proposed, and in the one against the Pacific Wood, Lumber & Flume Company there should be a decree for complainant, and the accounting showed four millions as claimed in the bill to be the amount of profits to be paid to the Consolidated Virginia Mining Company, but that Mackey and Fair in their half of the suit, or either of them, if sued alone, should succeed in defeating the claim altogether, and procure a decree on the merits in their favor; and, further, that the Pacific Wood, Lumber & Flume Company should pay the claim, would it not be entitled to call upon Mackey and Fair to refund the amount actually wrongfully received

by them in dividends? But the accounting between the Consolidated Virginia Mining Company and the Pacific Wood, Lumber & Flume Company, and between the latter and Mackey and Fair, taken in the suit of *Burke* v. *The Pacific Wood, Lumber & Flume Company*, would not be conclusive, for the reason that Mackey and Fair were not parties to it, and the whole would have to be gone over again, with perhaps an entirely different result. So, also, suppose Burke should not be able to satisfy his decree against the Pacific Wood, Lumber & Flume Company and Flood, if the latter were a party to it, and should seek to enforce his judgment against Mackey and Fair upon their personal liability as stockholders under the statutes for their share of the decree, then Mackey and Fair would either be concluded by the judgment against the corporation for whose liability they are responsible as stockholders, in a proceeding to which they were not parties, and for a claim which in suits against them individually they had defeated, or else there would have to be another accounting. There would at all events have to be another accounting to ascertain their share of the liability.

Again, it is alleged in the bill that Flood, O'Brien, Mackey and Fair, during all the time mentioned, were partners in business, and that all the transactions complained of as to them were on their joint account as such copartners. If so, all moneys received by them on the transactions as alleged were partnership funds—partnership assets—and must be accounted for as such. Under these allegations they are not merely joint, or joint and several *tort-feasors*. The act is a firm act—an act of a single indivisible commercial entity. The moneys received as dividends from the corporation and which are sought to be recovered were partnership funds. An account which shall be binding on the parties cannot be taken of partnership transactions without the presence of all the partners. Each member is individually liable, it is true, for all the obligations of the firm, but if he is compelled to pay the whole he is entitled to contribution. Whatever the rule as to contribution may be as between mere joint or joint and several *tort-feasors*—and there appears to be some con-

flict of authority as to them (see Trustees and Tort-Feasors, 1 Am. Law Rev. N. S. 36)—I take it there can be no doubt that a partner is entitled to contribution from his copartner when he has paid more than his share of the firm liabilities, even though the liabilities grow out of a tortious act of the firm. When money has come into the hands of a partnership on a partnership transaction, however unlawfully or wrongfully acquired as between the members, it is partnership assets, and must be accounted for as such as between themselves. *McBlair* v. *Gibbes,* 17 How. 337. In this case the supreme court, approvingly quoting from a prior case, says: "Can one of two partners possess himself of the property of the firm, and be permitted to retain it, if he can show that in realizing it some provision in some act of parliament has been violated? The answer is that the transaction alleged to be illegal is completed and closed, and will not be in any manner affected by what the court is asked to do *as between the parties.* The difference (he observes) between enforcing illegal contracts and asserting title to the money which has arisen from them is distinctly taken in *Tenant* v. *Elliot* and *Farmer* v. *Russell,* and recognized by Sir William Grant in *Thompson* v. *Thompson.*"

Also in *Brooks* v. *Martin,* 2 Wall. 70, 81, it is held that "after a partnership contract, confessedly against public policy, has been carried out, and money contributed by one of the partners had passed into other forms—the *results* of the contemplated operation completed—a partner in whose hands the profits are cannot refuse to account for and divide them on the ground of the illegal character of the original contract."

The principle stated in these cases covers this case. Upon the allegations of the bill these contracts set out between the two corporations were fulfilled, the consideration paid over, and the original transactions closed. The profits accrued thereupon, according to the allegations of the bill, came to the firm of Flood, O'Brien, Mackey and Fair, as partners, and, however obtained, they were upon that hypothesis partnership assets, and as between them must be so treated.

Should this suit be divided, then, and one part proceed in one court and another in a different court, or should there be five separate suits, and Mackey and Fair defeat the complainant, yet if the complainant should recover in some of the other suits, and the defendant therein be compelled to pay the decree, Mackey and Fair would be undoubtedly liable to be called upon in another suit to contribute, and the whole litigation would have to be gone over again. It must be born in mind that this is not an action at law against mere *tort-feasors* to recover *damages* for some tortious act, but a suit in equity to have an account of specific moneys paid to a corporation on contracts fully executed, alleged to be illegal, and by it distributed to its stockholders in dividends.

But suppose it turns out that Flood, O'Brien, Mackey, and Fair were not partners; that their acts were not partnership acts, and that the dividends received were not partnership assets, I do not perceive that it would affect the question as to the *finality* of the determination within the meaning of the statute. There is nothing necessarily or essentially fraudulent or morally wrong in the mere fact that Flood, O'Brien, Mackey and Fair owned stock, or even a controlling amount of stock, in, and are officers of, the two corporations; or that, being such stockholders and officers, one corporation through their agency sells wood and lumber to the other. It may well be for the best interest of both corporations to enter into such transactions. The Consolidated Virginia Mining Company is not the only party wanting wood and lumber, and the Pacific Wood, Lumber & Flume Company is a corporation organized and competent to sell wood and lumber to all who desire to purchase. It may have facilities for furnishing these articles of large and general consumption which enables it to sell them at lower prices than they can be obtained for elsewhere. If that be the case, it would be to the advantage and interest of the other corporation to purchase from it, even though its officers and agents are also officers and agents of the other corporation. Should these parties, on the ground of the delicacy of their position, decline to purchase of the Pacific Wood, Lumber & Flume Company on better terms

(if better terms were offered) than could be obtained elsewhere, the complainant in this suit, as a stockholder in the Consolidated Virginia Mining Company, would be very likely to complain. The position of Flood, O'Brien, Mackey and Fair may be delicate, and their acts in it call for rigid scrutiny, but there is nothing necessarily fraudulent or morally wrong in it. These acts of purchase, however, are alleged to be at higher prices than others charged, and in pursuance of of a conspiracy to injure the purchaser, and to be in fact fraudulent. It is easy upon information and belief to charge conspiracy and fraud whereby enormous profits accrue to the alleged culpable parties; but it is quite a different matter to establish them by satisfactory proofs. As now presented, no answer even having been filed, the matters rest upon naked allegations upon information and belief. It is impossible to anticipate what may turn out in the proofs. It may possibly turn out in some legal aspect of the case that defendants may be adjudged to account, whether rightfully or not, under circumstances disclosing no actual fraud, and no moral delinquency at all. In such a case a right to contribution would certainly arise in favor of the party who is called upon to pay more than his share, even though there is no partnership between them. At all events, various results may be reached in different suits and different courts, under different views, different management, or different proofs; and under various possible aspects there might well be reasonable ground to claim a right to contribution, and wherein a party might reasonably bring an action to enforce it, though he might fail in the action. In such a case the finality of the determination, as to the party charged in the accounting who pays more than his share, does not depend upon the result of his action to compel a contribution, but upon whether he has reasonable ground in good faith to seek to compel a contribution, even though he may ultimately fail. For the purpose of this motion we cannot look forward and determine absolutely whether a right of contribution will ultimately exist or not. If it can be seen that, under any aspect of the case that may reasonably be presented, there may be reasonable

ground to prosecute an action for contribution, then any determination as to an accounting, in a proceeding where all of the parties interested are not present and bound by the determination, cannot be regarded as a *final* determination as to those parties within the meaning of the statute authorizing the removal of the case.

The fact of a liability to further litigation as between the parties, to ultimately determine their rights as between themselves, upon reasonable ground, is itself sufficient to render the determination not final as to Mackey and Fair, without reference to the ultimate result of such renewed litigation. I think I see a reasonable liability to such further litigation in various possible aspects that may be presented, whether the acts of Flood, O'Brien, Mackey and Fair turn out to be partnership acts, and the moneys received by them from the corporation partnership assets or not. The court is not now called upon to detetmine the merits of this case, or the ultimate rights of these parties between themselves, but only to ascertain whether a decision of the branch of the suit between complainant and Mackey and Fair, without the presence of the other parties, is likely to be a *final* determination of the *whole* controversy as to them, so that there shall be no further ground to litigate their rights as to these same transactions with the other parties to them. Looking at the case from any point of view, then, it seems clear to me that there cannot be a "final determination of the controversy" as to Mackey and Fair, or either of them, or as to anybody else, without the presence of the Pacific Wood, Lumber & Flume Company, Flood, and the representatives of O'Brien. Indeed, nothing would be *finally* determined as to any of the parties in a suit against a portion of the defendants.

I suppose the right of citizens of California to have their controversies among themselves adjudicated in the state courts is as absolute and indefeasible as that of a citizen of Nevada to have his controversy with a citizen of California adjudicated in the national courts. Indeed, in the state courts the jurisdidiction is general and universal, while that of the national courts is limited to the cases expressly provided

for and specially pointed out by the United States constitution and the laws of congress made in pursuance thereof; and the case must be clearly brought within the language of the national constitution and statutes, or the national courts cannot assume jurisdiction. If a citizen of Nevada finds it for his interest to enter into such business relations with citizens of California that his rights cannot be separately determined, he does so at his own option, and while he enjoys the benefits of such relations, he also necessarily accepts the inconveniences incident to the relation; one of which is that when his rights are so intermingled with those of his associates that they cannot be separately finally determined, he may find it impracticable to appeal to the national courts, because he cannot do so without the violation of the rights of other parties to litigate in the state courts equally sacred, and therefore lose the privilege which he otherwise would have to litigate them in the national courts. If this be the result, it is in consequence of his own voluntary action, and he cannot expect congress or the courts to strain their authority in devising ways or pretexts for relieving him from the embarrassments incident to the relations which he himself has voluntarily assumed.

Upon the allegations of the bill, with my views of the case, I should not hesitate to sustain a demurrer to it for want of necessary or indispensable parties, had the defendants Flood and the Pacific Wood, Lumber & Flume Company been omitted, thus presenting the case in the position it would be in after removal to this court, as to them, by Mackey and Fair.

In my judgment, therefore, this is not a case that is authorized to be removed under section 639 of the Revised Statutes, and the removal was improperly made.

Upon the grounds stated, an order was made remanding the case to the state court, but the return of the record having been stayed for a limited time, to enable counsel to determine what course they would pursue, a petition was filed on behalf of Mackey and Fair for rehearing of the motion to remand, as to them, under section 639 of the Revised Stat-

utes, in order to enable counsel to present another point not suggested or argued on the first hearing, and counsel have been heard on this petition.

The point which counsel desire to present is that the facts alleged in the bill do not present any ground for relief, and that upon the face of the bill there must be a final decree for the defendants Mackey and Fair, and this being so, they claim that a final decree should be made on the face of the bill itself, and that such decree would be a final determination of the controversy, as to them, and the case should be retained to be disposed of on that ground.

Whether the bill states a good cause of action has not been argued; a rehearing being asked in order that it may be argued for the purpose of determining the jurisdictional question, and I shall therefore not express any opinion as to its sufficiency. But, assuming for the purposes of the petition for rehearing, that the court would hold, upon argument, the bill to be insufficient, and that there must be a decree for Mackey and Fair on that ground, the objections pointed out in deciding the other points already considered and determined would not be obviated. It would only be a determination of that branch of the particular action. It would not finally determine the rights of Mackey and Fair in the *other branch* of the action still pending against Flood and the Pacific Wood, Lumber & Flume Company. It would not *finally* determine their rights in the *whole* controversy. The effect of a determination of the branch of the case against Mackey and Fair in their favor, upon demurrer to the bill, would be no greater than if determined in their favor after a final hearing on the evidence. Upon a removal, as to Mackey and Fair only, under the act of 1866, the other branch of the same controversy, as against Flood and the Pacific Wood, Lumber & Flume Company, would remain in the state court. Owing to differences of views, differences of proofs, or difference in the course of proceeding, different results may be reached in the different branches of the controversy pending in the state and national courts, and thereby the *whole* controversy, as we have seen, would not be finally determined.

This court might be of opinion that the defendants Mackey and Fair are entitled to a final decree upon the face of the bill, while the state court, having jurisdiction of the other branch of the controversy, might determine that Flood and his co-defendant were not entitled to a decree upon the same bill, and under the same circumstances. Or the position of the courts might be reversed. We cannot assume that the determinations of different courts would necessarily be the same. The very right to transfer at all is based upon the idea that the result in the national court may be different from that in the state court. The same might be true upon a final hearing upon the evidence, but the effect would be the same in either event, whether determined on demurrer or final hearing. If Mackey and Fair should succeed in wholly defeating the complainant in their branch of the case and of the controversy, either on demurrer or a hearing, and the complainant should succeeed, as to Flood and his co-defendant, then, under the views I have taken, Mackey and Fair would be immediately liable to be called upon to contribute, either on his personal liability to complainant as a stockholder, or in a suit by the Pacific Wood, Lumber & Flume Company, or at the suit of his copartner or associate Flood, and the whole litigation have to be gone over again. The *whole* controversy would not be *finally* determined. If, on the other hand, Flood and his co-defendant should succeed in their defence, and Mackey and Fair be charged in their branch of the case, then they would be in a position to call upon Flood or the estate of O'Brien to contribute, and the same relitigation would result. The truth is, as I view the case, whatever the ruling upon the case might be, the *whole* of the controversy cannot be *finally* determined without the presence of all the parties to the entire controversy.

As the case appears to me, nothing affecting the question of jurisdiction would result from an argument of the demurrer, however it might be determined, and a rehearing for that purpose would be futile. It is therefore denied. If the views expressed are sound, and they seem clearly so to my mind,

there is but one course for me to pursue, and that is to remand the cases on both petitions to the state court, and it is so ordered.