## Dannmeyer *v.* Coleman and others.

*(Circuit Court, D. California.* April 3, 1882.)

1. **Suit by Stockholder—Conditions Precedent to Right to Sue.**

    Where a stockholder of a corporation brings a bill in equity for an accounting, and for equitable relief in his own behalf and in behalf of the other stockholders, to vindicate their rights, he must not only state the grievances necessary to entitle him to the relief sought, but he must also show to the satisfaction of the court that he himself, and not another person, has made an earnest and not a simulated effort to induce remedial action on the part of the managing body of the corporation, or that he has made an honest effort to obtain action by the stockholders as a body in the matter of which he complains.

2. **Same—Requisites of Verified Complaint.**

    His efforts in this direction must be stated particularly, and he must state that he was a stockholder at the time of the transactions of which he complains, or that his shares have devolved on him by the operation of law, and that the suit is not collusive, in order to confer jurisdiction on the United States courts, which statements should be verified by affidavit.

3. **Same—Action Barred by Statute.**

    Where, by the law of the state where suit is brought, the statute of limitations applies to all causes of action, equitable as well as legal, and under such law an action for relief on the ground of fraud is barred in three years, the cause of action not being deemed to have accrued until the discovery of the facts constituting the fraud, it must be averred that the facts were not discovered until within three years.

4. **Same—Multiplicity of Suits.**

    The question whether shareholders of single shares can bring suits on their own behalf and on behalf of all the other shareholders for the same grievances and for an accounting of the same transactions, suggested but not decided.

*H. G. Sieberst,* for complainant.

*Hall McAllister* and *Geo. R. Wells,* for certain defendants.

*S. Heydenfeldt,* for Consolidated Virginia Mining Company.

Sawyer, C. J.   The complainant, a citizen of Germany, and the owner of 100 of the 540,000 shares of the capital stock of the Consolidated Virginia Mining Company, a mining corporation organized under the laws of the state of California, filed his bill in equity, on his own behalf, and on behalf of all other stockholders of the Consolidated Virginia Mining Company, against James V. Coleman and James C. Flood, executors of W. S. O'Brien, deceased; the Nevada Bank, John W. Mackay, James G. Fair, James C. Flood, the Pacific Mill & Mining Company, the Pacific Wood, Lumber & Flume Company, the Pacific Refinery & Bullion Exchange, and the Consolidated Virginia Mining Company. The object of the bill is to obtain an accounting between the defendant, the Consolidated Virginia Mining Company, and the several

other corporations, defendants, the defendants Coleman and Flood, as executors of O'Brien, and Mackay, Fair, and Flood, in their individual characters as partners in the transactions set out, for large sums of money and a large amount of property, alleged to be ten millions of dollars in the aggregate, charged to have been fraudulently obtained upon various large transactions from the Consolidated Virginia Mining Company, by the other corporations, defendants, which are alleged to have been organized and controlled in pursuance of a conspiracy for that purpose, by the personal defendants, who also, as is alleged, owned a controlling interest in the Consolidated Virginia Mining Company, and were either the officers, or elected and controlled the officers, of that corporation. The sums so fraudulently and unlawfully obtained by said several corporations from the Consolidated Virginia Mining Company are charged to have been distributed in dividends to said Flood, O'Brien, Mackay, and Fair, or otherwise to have come into their hands.

The prayer of the bill is as follows: "Wherefore, your orator prays that it be by your honor adjudged and decreed that the defendants, said Flood, Mackay, and Fair, and Flood and Coleman, as executors as aforesaid of the estate of said O'Brien, account to the said Consolidated Virginia Mining Company and to the stockholders thereof for all the wrongs, frauds, and breaches of trust hereinbefore alleged and complained of; and on such accounting repay and restore to the said Consolidated Virginia Mining Company, for the use of the stockholders therein, except the defendants in this action, all profits, moneys, and property belonging in law and equity to said company, realized, gained, or obtained by said defendants, or any of them, by means of the dealings and transactions hereinbefore set forth, together with all the proceeds and fruits thereof," and for such other and further relief as may be just.

The allegations of the bill as to the acts of defendants, are similar to those contained in the bill in *Burke* v. *Flood,* 6 Sawy. 221, and it would serve no useful purpose to state them more fully now.

Mackay has not been served and has not appeared.

The Consolidated Virginia Mining Company demurs separately to the bill on various grounds, and several of the other defendants also demur upon similar grounds.

In the recent cases of *Hawes* v. *Contra Costa Water Co.* and *Huntington* v. *Palmer,* which went up from this court and were affirmed, the United States supreme court states the conditions which are necessary to enable a stockholder of a corporation to bring a suit on

his own behalf and on behalf of the other stockholders to vindicate the rights of the corporation. After stating the character of the grievances necessary to entitle the stockholder, instead of the corporation, to sue, the court says: "But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated, effort with the managing body of the corporation to induce remedial action on its part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body in the matter of which he complains."

There is no allegation whatever in this bill that the complainant has made any effort to induce the corporation, the Consolidated Virginia Mining Company, to seek a redress for the grievances alleged. It does not appear that he ever requested the directors to sue, much less that he ever made "an earnest, not simulated, effort with the managing body of the corporation to induce remedial action on its part;" nor does it appear that "he has made an honest effort," or any effort of any kind, "to obtain action by the stockholders as a body," or even any stockholders individually; and nearly four years is certainly time enough to permit him to make such "an honest effort."

He alleges that one S. P. Dewey, a stockholder in said corporation, nearly four years before, at a regular session of the board of directors, made an application and demand that the corporation bring a suit against the said Flood, O'Brien, Mackay, and Fair for the recovery of the same moneys, on the same grounds as alleged in this bill, but that the said directors refused to bring the suit. But the action of Mr. Dewey cannot avail the complainant in this bill. He does not appear to be in privity with Dewey, or to have been in any way connected with the request. Reasons not applicable to the complainant in this bill may have existed that would justify a refusal to act upon Dewey's request. At all events, if the complainant desires action he must himself take steps to secure it before he can acquire a *status* that will enable him to take the vindication of the rights of the corporation and other stockholders into his hands. There is nothing in the opinion of the supreme court to indicate that the action of a stranger

to him, for that stranger's own purposes, will give complainant the requisite *status*. It does not appear who were the directors or stockholders of the Consolidated Virginia Mining Company at the time of the filing of this bill, or for three and a half years prior to that date. Had the complainant applied to the board of directors then conducting the affairs of the corporations, it may be that his request would have been effectual. At all events, we are not authorized to assume the contrary without averment, and it should at least appear that some recent honest effort has been made to secure the protection of the rights of the stockholders through the action of the corporation itself. But even Dewey does not appear to have made any honest or any effort at all to obtain action by the stockholders as a body. So his action was in this respect also insufficient, within the decision, to enable him to maintain such a suit, much less the complainant.

The supreme court further says:

"The efforts to induce such action as complainant desires on the part of the directors and of the shareholders, when that is necessary, and the cause of failure in these efforts, should be stated with particularity; and an allegation that complainant *was shareholder at the time of the transactions of which he complains, or that his shares have devolved on him since by operation of law,* and that the suit is not a collusive one to confer on a court of the United States jurisdiction in a case of which it would otherwise have no cognizance, should be in the bill, which should be verified by affidavit."

There is no allegation showing any of these facts. There is no allegation "that complainant was a shareholder *at the time of the transactions of which he complains,* or that his shares have devolved on him since by operation of law." All the acts complained of occurred before the decease of O'Brien, which is alleged to have happened May 2, 1878, three years and six months before the filing of the bill. It does not appear that complainant was the owner of the stock, *or of any stock,* at or prior to that date; or when or how or for what purpose he became owner of the stock now alleged to be held by him. For aught that appears in the bill he may have purchased the stock on the day or week in which the bill was filed, with the sole design of bringing a suit for speculative or malicious purposes. It is an open, notorious, historical fact, appearing in the daily stock reports, familiar to all Californians, that at the date of the filing of this bill, and for a long time prior thereto, the stock of this corporation had but a very trifling value—less than three dollars per share. One with ideas of existing frauds, expanded to ten millions of dollars, or having a private grudge to satisfy, might very well think it a good operation to invest a few dol-

lars in the purchase of 100 out of 540,000 shares of stock, to serve as the basis of a speculative or malicious suit. But the supreme court, in effect, says, in the passages quoted, that a suit on such a basis cannot be entertained; that the complainant must affirmatively allege that he "was a shareholder at the time of the transactions of which he complains, or that his shares have devolved on him since," *not by purchase*, but "*by operation of law.*" He must also show that the suit is not a collusive one; and that he has in good faith made an honest effort to induce the corporation itself to redress its own grievances, and, on failure with the corporation, has made an effort to induce the stockholders as a body to act.

Not satisfied with simply deciding these principles as questions of equity law, the supreme court carried them into a rule of court, which now reads as follows:

Equity Rule 94. "Every bill brought by one or more stockholders in a corporation, against the corporation and other parties, founded on rights which may properly be asserted by the corporation, must be verified by oath, and must contain an allegation that the plaintiff was a shareholder at the time of the transaction of which he complains, or that his shares had devolved on him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction of a case of which it would not otherwise have cognizance. It must also set forth with particularity the efforts *of the plaintiff* to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action."

Thus, the bill must disclose the efforts of "the plaintiff," *not of others*, to secure redress in the ordinary mode. See, also, *Huntington* v. *Palmer*, affirming the case cited, 3 Mor. Trans. 536.

In view of past judicial history, both here and elsewhere, the supreme court, in my judgment, acted wisely in laying down the principles stated in its recent decisions, and its rule with reference to this class of bills filed by stockholders. It is always a suspicious circumstance where a single stockholder, among a large number in a corporation, rushes into a court of equity to vindicate, unaided and alone, the rights of the corporation and all other stockholders; and especially is this so where the amount of stock owned by him is so very limited that in case of success his own share of the recovery will be so small as to make the maxim, *de minimis non curat lex*, very properly applicable; which would be the case in this instance but for the enormous, not to say astounding, amounts alleged upon information and belief, only, to have been fraudulently appropriated. The bill does not contain the allegations referred to or required by

these decisions and this rule; and it is, therefore, insufficient on those grounds.

The suit is also barred by lapse of time in analogy to the statute of limitations. In this state the statute of limitations applies to all causes of action, equitable as well as legal. The grounds upon which the suit is rested are fraud. The moneys and property of which an account is sought and restoration asked are alleged to have been obtained through the fraudulent conspiracy and acts of the natural persons who are defendants; and under section 338 of the Code of Civil Procedure, subd. 4, "an action for relief on the ground of fraud" must be brought within "three years;" the cause of action not to be deemed to have accrued "until the discovery by the aggrieved party of the facts constituting the fraud." But when it appears that the acts were performed more than three years before the commencement of the suit, a demurrer to the bill will be sustained unless it is also averred that the facts constituting the fraud were not discovered till within three years. *Sublette* v. *Tinney*, 9 Cal. 425; *Boyd* v. *Blankman*, 29 Cal. 44; *Carpentier* v. *Oakland*, 30 Cal. 444; *Broderick's Will*, 21 Wall. 518. All the acts alleged as constituting the cause of suit were acts in their nature hostile and adverse at the moment of their performance, and all of them occurred before the death of O'Brien, which is alleged to have happened on May 2, 1878, three years and six months before the filing of the bill. There is no averment of their discovery within three years. On the contrary, they are shown by the allegations of the bill to have been well known, and that Dewey made a written demand upon the board of directors, that they bring an action in the name of the corporation against the other defendants upon the same grounds as alleged in this bill, and to accomplish the same purpose. Besides, the principal facts constituting the fraud appear in the bill to be matters of public and corporate record under the statutes, of such general and public notoriety that stockholders and even strangers must have known them. If they did not, especially stockholders, who were entitled to examine the corporate records, they must have been negligent, and careless of their own interests. The means of knowledge were open to them, and means of knowledge are equivalent to actual knowledge. *Manning* v. *San Jacinto Tin Co.* 8 Pac. Law J. 821–32; *Broderick's Will*, 21 Wall. 518–19; *Ashhurst's Appeal*, 60 Pa. St. 317; *Wood* v. *Carpenter*, 101 U. S. 141; *New Albany* v. *Burke*, 11 Wall. 107.

An averment, therefore, of discovery within three years, even if it had been made, it would seem, would have been futile in view of the other facts disclosed in the bill.

It is unnecessary to decide other points discussed by counsel, as more than enough to sustain the demurrers have already been determined. See *Burke* v. *Flood,* 6 Sawy. 220, for a discussion of some of them. The bill, however, suggests some jurisdictional and other points which have not been made or discussed by counsel in this case, nor, so far as I am aware, in the precise form, in any other. They must sooner or later occur to counsel and be presented for adjudication, and they may as well be now suggested for consideration.

The first point made in complainant's brief is in these words: "The injuries complained of and the remedies asked being common to all the stockholders, one of them may sue, but MUST *join the others.*" A whole page of authorities is cited to sustain the point. It is, doubtless, intended to say, join them in the sense of suing on his own behalf, and on behalf of all other stockholders. If he is right in this proposition, then the suit is not the suit alone of the stockholder who sues, but the suit of all the stockholders on whose behalf he sues. And under the decision of the supreme court in the *Removal Cases,* in order to give the national courts jurisdiction, is it not necessary to aver, not only that the stockholder named as complainant on the record, but all of the stockholders on whose behalf he sues, are aliens? Under the decisions in those cases *all* the parties on one side must be aliens, and all on the other side citizens.

Again, the primary controversy in this case is between the Consolidated Virginia Mining Company, a California corporation, on one side, and all the other defendants on the other side. The relief sought is an accounting between the Consolidated Virginia Mining Company with, and a decree in its favor against, all the other defendants. The whole main and primary controversy is between those parties.

The complainant Dannmeyer's interest as a stockholder is only secondary and derivative, and merely incidental to that of the corporation. Transferring the corporation from the side of the defendant to that of the complainant, who is simply using the corporation and litigating in his own name, and actually in behalf of the corporation and for its own benefit, as is suggested in the *Removal Cases,* should be done for the purpose of determining the question of jurisdiction, and we have an alien and a California corporation on one side, and several California corporations and citizens on the other. Does not this oust the jurisdiction?

Again, for aught that appears in the bill, all the personal defendants may be citizens of the same country with the complainant, and the bill fails to show a case of jurisdiction on that ground, as it does not appear that the controversy is between aliens on one side and citizens of the United States on the other. This particular defect might, of course, be remedied by amendment.

Another question is suggested by this case. By reference to *Burke* v. *Flood, supra,* it will be seen that a similar suit for these same grievances was brought by a single stockholder, Burke, on behalf of himself and *all other stockholders.* And it is a notorious, historical fact, of which the daily newspapers have been full, that these are not the only suits brought in the same way for these same grievances. Is each holder *of one* of the 540,000 shares of stock entitled to bring a suit in equity on behalf of himself and all other stockholders for an account of these same transactions? or when such a suit has been brought by one stockholder, must the others come in and seek their relief in that suit? If each stockholder is entitled to bring such a suit, then there is something wrong in the law, and the sooner the supreme court by rule, or congress by statute, regulates the matter, the better it will be for the due administration of justice.

For the reasons given the demurrer must be sustained, and the bill dismissed. And it is so ordered.

See Notes of Cases, *Hawes* v. *Contra Costa Water Co., ante,* p. 93.