## DICKENSON et al. v. SCHEE.

(Circuit Court of Appeals, Seventh Circuit. September 16, 1924.)

No. 3325.

Corporations ⟨⟨⟨215—Corporate form cannot be used to protect owners from personal liability for fraudulent acts.

Where there was evidence that the individual defendants organized the defendant corporation merely as an artificial person through which to do business for themselves, they cannot escape liability for a fraudulent contract made by them, and of which they received the benefit, because it was made in the name of the corporation.

Appeal from the District Court of the United States for the Western District of Wisconsin.

Suit in equity by John Schee against A. D. Dickenson, Jr., Lee B. James, and the

Lone Star Immigration Company. Decree for complainant, and the individual defendants appeal. Affirmed, as modified.

W. B. Brown, of Kansas City, Mo., for appellants.

Frank Winter, of La Crosse, Wis., for appellee.

Before ALSCHULER and PAGE, Circuit Judges, and FITZHENRY, District Judge.

FITZHENRY, District Judge. This is an action in equity, brought by John Schee against A. D. Dickenson, Jr., Lee B. James, and the Lone Star Immigration Company. The plaintiff filed his bill in the Wisconsin state court, and in due course it was removed, on motion of defendants, to the United States District Court for the Western District of Wisconsin.

The bill charges that defendant corporation, of which the individual defendants were officers or agents, falsely and fraudulently represented that certain land in Texas which defendants desired to sell plaintiff, were fully worth $275 per acre; that it could be cleared for $12 an acre; that it was all irrigable, and that defendants would look after the clearing of the land for the plaintiff and put it into crops, and from these plaintiff would be able to make the deferred payments as they became due; that plaintiff had not seen the land before he purchased it, knowing nothing about its character, except as he was informed by defendants; that he relied upon their representations and purchased the land, paying down a certain mentioned sum and executing promissory notes evidencing the deferred payments, secured by mortgage on the land; that the representations were entirely false; that the land was not irrigable, but, on the contrary, was rough and broken, and not worth to exceed $50 an acre, if that much; that it could not be cleared and put into crops; that there was no means of getting water to it, and the representations in general were false and fraudulent, and known so to be by defendants when made, and were made by defendants for the purpose of inducing plaintiff to enter into the contract; that plaintiff relied upon the said representations and entered into the contract; that he sent large sums of money for clearing the land to the agents of defendants, and paid out large sums of money before he found out the fraud; that defendants agreed they would not negotiate the notes, but would keep them, so they could be met from time to time by the sale of the crops; that in fact the defendants sold the notes, without recourse, to third parties; that the transfer of the notes, however, was only colorable, etc. Plaintiff tendered a return to defendants of the land sold, and asked that defendants be ordered to return to plaintiff all money which plaintiff had paid for the said land, including all money invested and sent for investment, on account of defendants' representations, and for appropriate relief.

Defendants filed their joint answer, admitting the allegations of the bill as to the sale of the land and the execution of the notes and mortgage, but charging that plaintiff ought not to be permitted to maintain his action, because he knew what he was getting, and afterwards, with full knowledge of the facts, ratified and confirmed the transaction; that plaintiff has not been evicted from the land.

Upon a hearing in the District Court, the court found the facts as charged in plaintiff's bill and granted the relief prayed. On this appeal by the individual defendants, nine assignments of error are specified. However, appellants admit there is only one question in the case. Does the bill or petition state a case cognizable in equity against the individual defendants, appellants?

Before the taking of the testimony commenced at the trial, appellants objected to the introduction of any evidence, for the reason that the bill, in so far as it applied to them, was void of equity, and sought no relief within the power of equity to grant. At the conclusion of the testimony offered on behalf of the plaintiff, appellants moved to dismiss as to them. The individual defendants (appellants here) as well as the corporate defendant, procured the removal of this cause to the District Court. All three defendants answered, the same solicitor appearing on behalf of all of them. One of the solicitors appeared and cross-examined witnesses upon the taking of depositions and participated in the trial in the District Court.

It is contended by counsel for appellants that the corporate defendant is the only culpable one in an action of this character, while those assisting in the fraud are neither necessary nor proper parties, claiming that no judgment can be secured against them. Appellants, however, concede that a different rule would apply if the complaint charged, and the proof showed, that the defendants had an interest in the contract sought to be canceled, or the notes given in connection with the contract, and likewise sought to be canceled, or that such defendants received a part of the money. This

concession disposes of this appeal, for the record shows every element included in appellants' concession was charged, proved, and not controverted.

There are two things highly enlightening as to the facts in this case. The court ordered all of the defendants to make restitution to the plaintiff in substantially the sum of $30,000. From this judgment the corporate defendant does not appeal. One of counsel for the defendants was called to the witness stand by plaintiff to make proof of the corporate organization of the Lone Star Immigration Company. This colloquy took place:

"Q. It is a corporation, of course? A. Yes, sir.

"Q. It was originally a Texas corporation? A. That was before I became attorney *for these men. They* abandoned *their Texas corporation,* incorporated under the laws of Missouri, taking over the Texas property, so the Lone Star Immigration Company now, instead of being a $5,000 corporation—I hesitate to tell you what it is, because I am not sure, but I am under the impression it is $100,000. I know it was increased largely.

"Q. Is Mr. Dickenson still the president of it? A. Yes.

"Q. And Mr. James still connected with it? A. Yes."

In other words, *these men,* appellants, were the Lone Star Immigration Company of Texas, and a reading of the record in this case is highly persuasive of the conclusion that, while there might have been a corporate entity such as the name implies, it was merely the artificial third person, by and through which appellants were operating at the time of their transaction with Dr. Schee; that it was very largely a convenience, mere scenery upon the stage where appellants were the actors. There is possibly some merit in the contention that the allegations in the petition might have been more accurately laid—that is, more apt language used; but that which was used was ample to put defendants upon knowledge of the nature and character of the action being prosecuted against them.

The contention of appellants that the complaint failed to charge, and the proof to support, "that the defendants had an interest in the contract sought to be canceled, or the notes given in connection with the contract, and likewise sought to be canceled, or that such defendants received a part of the money," is absolutely untenable. The contract to all intents and purposes was that, of appellants, the notes given in connection with the contract, and likewise sought to be canceled, were given to defendants, and defendants received most of the money. The record, however, fails to show just how appellants divided the proceeds of the transaction between themselves; but this is immaterial so far as the integrity of the judgment of the District Court is concerned.

As to the defense on the facts, and the only one interposed, that of ratification after knowledge: Substantially the only evidence in the record upon this question was that given by Dr. Schee himself, upon cross-examination. After the contract was made, the cash payments collected, the Liberty Bonds received, and the notes executed and delivered, plaintiff saw the land in question, observing there was more brush on it than had been represented, but thought nothing of it, still having faith in appellants; also saw a small draw on the north side of a certain 40, but, being assured it could be taken care of all right, he made some cash payments for clearing and improving the land, and while in Texas he and other prospects were artfully kept out of touch with local people. In the light of all these facts, and the circumstances surrounding the parties, the trial court properly held them insufficient to ratify the fraud, and to bar a recovery.

The contention that the judgment of the court is broader than the pleadings will permit is without merit. The bill is both accurate and comprehensive enough to show that, under the guise of a legitimate promising real estate transaction, the plaintiff was lulled into a feeling of security by appellants, procured to execute annoying contracts, to execute and deliver many promissory notes, and to yield up his property and money, to his substantial damage and inconvenience, and for which he asks a court of equity to grant him relief. No motion to dismiss was made until the close of the evidence and all of the defendants participated in the trial below. The judgment is binding upon them as to all things which were actually adjudicated within the issues, or might have been.

The decree of the District Court contains ample provision for the pro tanto reduction of the money judgment by the deposit with the clerk of the District Court, by defendants, of the unpaid notes and other evidences of indebtedness and obligation, canceled, within 30 days from the date of the entry of the decree. That period has

elapsed since this appeal was prayed and allowed. The decree should be, and is hereby, amended so as to extend this privilege "until the expiration of 30 days after the filing of the mandate of this court in the District Court in this case, or such further time as the District Court may grant, upon good cause shown."

With this modification, the decree of the District Court is affirmed.